IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SIERRA FOOD GROUP, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  2:14-cv-02401-TMP |
| ) | |
| SNACLITE, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This cause is before the court on the motion for summary judgment filed by the plaintiff, Sierra Food Group, Inc., ("Sierra") on February 13, 2015.  (Doc. 12). The plaintiff seeks summary judgment as to its claims against the defendant.  The motion was supported by a brief and evidentiary submission.  (Docs. 13, 14).  The defendant has filed a brief in opposition, and the plaintiff has filed a reply to that brief.  (Docs. 20, 21).  Oral argument on the motion was heard on March 20, 2015. The court has considered the evidence and the arguments set forth by all parties. The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) (doc. 15).

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 47 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met its burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting former Fed. R.

Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.

After the non-moving party has properly responded to a proper motion for summary judgment, the court "shall" grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The substantive law will identify which facts are material and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-252; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n. 11 (1983).

However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The evidence supporting a claim must be "substantial," Marcus v. St. Paul Fire and Marine Ins. Co., 651 F.2d 379 (5th Cir., Unit B, 1981)[1]; a mere scintilla of evidence is not enough to create a genuine issue of fact. Young v. City of Palm Bay, 358 F.3d 859, 860 (11th Cir. 2004); Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1249-1250 (11th Cir. 2004). If the non-movant's evidence is so thoroughly discredited by the rest of the record evidence that no *reasonable* jury could accept it, the evidence fails to establish the existence of a genuine issue of fact requiring a jury determination. See Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have reviewed the facts in the light depicted by the videotape."); Lewis v. City of West Palm Beach, Fla., 561 F.3d 1288, 1290 n. 3 (11th Cir. 2009). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir.

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981)(*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent decision of the former Fifth Circuit rendered prior to October 1, 1981.

4

1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988). Utilizing these standards, the court undertakes the analysis of whether the moving party has shown that it is entitled to judgment as a matter of law.

## FACTS

For purposes of plaintiff's motion for summary judgment, the facts, taken in the light most favorable to the non-moving defendant, are as follows.[2] Sierra is a food manufacturer that supplies products to food distributers such as the defendant, SnacLite, LLC ("SnacLite"). Tim Petro ("Petro") is the president and only member of SnacLite. During the summer of 2014, Sierra provided SnacLite and its customers with food products ("Goods"), and billed SnacLite accordingly. Under SnacLite's business model, when SnacLite receives an order from one of its

---

[2] The defendant did not include a statement of fact in the response to the plaintiff's motion for summary judgment. (Doc. 20). Accordingly, the court will rely primarily on the facts set out by the plaintiff in the motion for summary judgment, to the extent they do not conflict with any statement by the defendant.

customers, it contracts with companies like Sierra, who manufacture and ship the product directly to SnacLite's customers. Upon delivery to SnacLite's customer, SnacLite is paid by its customer, and it in turn pays the manufacturer/shipper. Therefore, when Sierra "provided" the Goods to SnacLite, it actually shipped the Goods to SnacLite's customers on SnacLite's behalf.

The Goods at issue were delivered between July 2, 2014, and September 19, 2014, and were priced at $334,167.38. Sierra has included in its evidentiary submission SnacLite's purchase orders, Sierra's invoices, and the proofs of delivery for the Goods. (Pl. Exh. C-1). SnacLite did not reject any of the goods listed in the invoices, nor has SnacLite previously asserted that the Goods were not delivered pursuant to the contract with Sierra.[3] SnacLite received the invoices from Sierra, payment of which was due within thirty days of the invoice date. SnacLite did not object to any of the invoices. In addition to the invoices for goods, Sierra issued an invoice for $500.00 in freight charges.[4] Sierra also purchased unfinished materials in the amount of $70,676.46 to fulfill SnacLite's orders, for which Sierra contends that SnacLite also is liable.

---

[3] Indeed, even in response to the motion for summary judgment, SnacLite has not stated that deliveries to its customers were missing or incomplete. It has stated only that it needs more time to confirm delivery with all of its customers.

[4] The freight charges originally totaled $2,412.96, but Sierra paid the invoice on SnacLite's behalf at the discounted rate of $500.00. (Pl. Exh. C-1, pp. 159-165).

Between September 30, 2014, and December 3, 2014, Petro, as president of SnacLite, sent eight e-mails to Sierra, discussing SnacLite's attempts to pay amounts owed to Sierra. Another e-mail exchange took place between the parties in February 2015. On February 6, 2015, Petro requested that Sierra run another order for SnacLite. Rodney Walker ("Walker"), president and C.E.O. of Sierra Food Group, Inc., replied on behalf of Sierra, stating that the request would be discussed at the annual board meeting and asking when Sierra could expect payment for the past-due invoices. In his e-mail reply, Walker then listed invoices from July 2014 to November 2014, with the amount owed totaling $404,843.84. (Pl. Exh. C-4). There was no further reply to the February 6, 2015, e-mail. On February 11, 2015, Walker e-mailed Petro, within the same e-mail thread begun on February 6, and notified him that Sierra would be able to run the new order. Walker's e-mail also stated, however, that "we need to know what the plan is to repay the past due invoices below." (Pl. Exh. C-4). Walker attached a copy of the February 6 email containing the invoices. The amount owed was again stated as totaling $404,843.84. Petro replied to the e-mail on February 11, 2015, saying, "[t]hank you for your email. The plan is when the recall money comes into make clear up the balanced owed." (Pl. Exh. C-4) (errors in the original). SnacLite has made no payments toward the invoices, and Sierra filed suit for collection of the invoices on December 15, 2014.

## DISCUSSION

In its primary argument for summary judgment, Sierra claims it is entitled to summary judgment for the amount of $404,843.84 because SnacLite has admitted its liability for that amount. Sierra supports its argument by citing the emails exchanged between the parties in 2014 and 2015, as well as the statement of account dated December 31, 2014. (Pl. Exh. C-2, C-3, C-4). Although the 2014 e-mails appear to admit liability for *some* amount, there is no discussion of a sum certain or an acknowledgement of any specific amount owed by SnacLite. Also, there is no evidence of whether the statement of account found in plaintiff's exhibit C-2 ever was provided to SnacLite.[5] This leaves only the 2015 e-mail thread to support Sierra's theory that SnacLite acknowledged liability for the sum certain of $404,843.84.

Count III of Sierra's complaint consists of a claim on account stated against SnacLite, and it appears that Sierra's motion for summary judgment proceeds under the same legal theory. Under Alabama law, an account stated is an agreement undertaken subsequent to the original transaction. It may not be founded on the original liability and, therefore, it must be shown that a new

---

[5] SnacLite's mailing address is listed on the statement, but there is no testimony or evidence that the address is correct. Also, there is no testimony regarding Sierra's mailing procedures or whether SnacLite was aware of those procedures. Therefore, the statement of account in plaintiff's exhibit C-2 is insufficient to support a claim on account stated. Ayers v. Cavalry SVP I, LLC, 876 So. 2d 474, 477-78 (Ala. Civ. App. 2003).

agreement took place between the parties that the debtor will pay a certain amount. Martin v. Stoltenborg, 273 Ala. 456, 142 So. 2d 257 (1962).  The agreement may be treated as if a promissory note was given by the debtor for the amount due. Ingalls v. Ingalls Iron Works Co., 258 F.2d 750 (5th Cir. 1958)[6]; Karrh v. Crawford-Sturgeon Ins., Inc., 468 So. 2d 175, 176 (Ala. Civ. App. 1985).  To be entitled to summary judgment on the theory of account stated, the movant must make a *prima facie* showing of entitlement.

> A prima facie case on an account stated is made when the plaintiff proves (1) a statement of the account between the parties is balanced and rendered to the debtor; (2) there is a meeting of the minds as to the correctness of the statement; and (3) the debtor admits liability. *Ingalls v. Ingalls Iron Works Co.*, *supra*; *Barber v. Martin*, 240 Ala. 656, 200 So. 787 (1941).  The debtor's admission to the correctness of the statement and to his liabi[li]ty thereon can be express or implied. An account rendered, and not objected to within reasonable time becomes an account stated, and failure to object will be regarded as an admission of correctness of the account. *Home Federal Savings & Loan Association v. Williams*, 276 Ala. 37, 158 So.2d 678 (1963); *Joseph v. Southwark*, 99 Ala. 47, 10 So. 327 (1891).  Once the plaintiff proves his prima facie case, the burden of proof shifts to the defendant. *Barber v. Martin*, *supra*."

Car Center, Inc. v. Home Indem. Co., Inc., 519 So.2d 1319, 1323 (Ala. 1988) quoting University of South Alabama v. Bracy, 466 So.2d 148, 150 (Ala. Civ. App. 1985)(emphasis removed).  Consideration for the new agreement must be

---

[6]  See Bonner v. City of Prichard, *supra*.

proven, and this usually is in the form of mutual promises that the original financial obligation can be settled by agreed upon payment.

> In an action upon an account stated, to authorize recovery there must be shown a consideration to support the promise relied on, and if there is shown no consideration for the alleged promise, the plaintiff is not entitled to recover.  In other words, in the absence of any original pecuniary obligation there can be nothing to settle or to merge into an accounting, and hence the promise to pay a claim not founded on such obligation, though it purports to be made as upon an account stated, is not conclusive and may be shown to be without consideration.

Martin v. Stoltenborg, 273 Ala. 456, 459, 142 So. 2d 257, 259 (1962).

The first hurdle Sierra must overcome in demonstrating a *prima facie* case on account stated is showing that a statement of account was properly "balanced and rendered" to SnacLite.  As an account stated must be a post-transaction agreement, Sierra's motion for summary judgment cannot be based on any of the original invoices sent to SnacLite.[7]  It also cannot be based on any of the 2014 e-mails because none of those e-mails contain a sum certain for SnacLite to agree to pay.  Finally, Sierra's motion cannot be based on the statement of account in plaintiff's exhibit C-2, because there is no evidence put forth that SnacLite ever

---

[7] It may be argued, of course, that *each* invoice to SnacLite was itself an account stated, in that each invoice "balanced and rendered" the amount owing for that transaction.  Here, it is not necessary to examine each invoice as there was a clear balancing and rendering of the entire debt owed in February of 2015.

received the statement.  <u>Ayers</u>, 876 So. 2d at 477-78.  The only communications that could fit the requirements of an account stated are the 2015 e-mails.

On February 6, 2015, at 7:21 a.m., Petro sent an email to Walker, asking whether Sierra would be willing to "run an order of Power Butter and Power PB." (Pl. Exh. C-4, p. 4).  At 8:19 p.m., Walker replied that he would present the request at the annual board meeting.  Walker further stated that Sierra would "reconsider reinstating terms once the past due is settled," and asked that Petro "advise when we will see payment on the invoices listed below."  (<u>Id.</u> at p. 3).  Walker then listed invoices that are the basis of this action, dating from July 2014 to November 2014 with the total amount owed stated as $404,843.84.  (<u>Id.</u> at pp. 3-4).  On February 11, 2015, Walker notified Petro via e-mail (within the same e-mail thread commenced February 6) that Sierra agreed to run the new order and inquired "what the plan is to repay the past due invoices below."  (<u>Id.</u> at pp. 1-2).  Walker then copied his February 6 e-mail, listing the invoices with the total amount due at $404,843.84.  Petro replied that, "[t]he plan is when the recall money comes into make clear up the balanced owed."  (<u>Id.</u> at p. 1) (errors in the original).[8]

---

[8] There is some uncertainty as to whether Petro's ultimate e-mail was in response to Walker's e-mail on February 6, or his next e-mail on February 11.  Although Walker's statement is that Petro was responding to the February 11 e-mail (Walker, Aff. ¶¶ 16-19.), copies of the e-mails provided to the court show that Petro's February 11 e-mail was sent at 1:39 p.m., and Walker's February 11 e-mail was sent later, at 3:27 p.m.  Because both of Walker's e-mails contain the same statement of account, which of the two e-mails Petro was replying to is of little consequence.  The result is the same.

In <u>Car Center</u>, the Alabama Supreme Court stated that "[t]he presumption of the law is that a letter, properly addressed with sufficient postage, and unreturned to the sender whose address is shown on the envelope, was received by the addressee."  519 So.2d at 1323, quoting <u>Currie v Great Central Ins. Co.</u>, 374 So. 2d 1330 (Ala. 1979).  Although, in Alabama case law, mailing is the most commonly discussed method of rendering an account stated, it has not been held that mailing is the *only* way to render an account stated.  In the case at bar, we have a rendering in the form of e-mail.  The February 6, 2015, e-mail setting out the total past-due amount is comparable to the properly addressed letter contemplated in <u>Car Center</u>.  Furthermore, the reply from Petro within the same e-mail thread is an acknowledgement that he received the account stated from Walker.[9]  Accordingly, Sierra has demonstrated that the statement was rendered to SnacLite.

The second and third prongs required for a *prima facie* case on account stated can be either express or implied.  The second prong requires a "meeting of the minds" as to the correctness of the statement.  The second and third prongs – the debtor's admission of liability – are implied when "there has been a showing that the bill was rendered and the recipient of the bill failed to object within a

---

[9] Applying Alabama law, the United States District Court for the Eastern District of New York determined that e-mails are a sufficient confirmation of the receipt of statements of account.  <u>CRC Ins. Services, Inc. v. LaMere Associates, Inc.</u>, 2009 WL 3379090 * 2 (E.D. N.Y. Oct. 19, 2009).

reasonable time." Car Center, 519 So. 2d at 1323, citing Home Federal Savings & Loan Association v. Williams, 158 So. 2d 678 (Ala. 1963).  In Petro's reply to the account stated, he states "[t]he plan is when the recall money comes into make clear up the balanced owed." (Pl. Exh. C-4, p. 1) (errors in the original).  Petro's reply acknowledges both that there is a balance owed and Walker's request for a "plan to repay the past due invoices."  Petro does not object either to the owing of a debt, or the amount in the account stated.  Furthermore, SnacLite has not asserted that Petro or anyone else ever objected to the amount in the account statement.

Petro's reply to Walker's e-mail containing the account stated is confirmation of receipt of the account stated.  Based on Petro's failure to object to the amount or to the debt within a reasonable time, it is implied that there was a meeting of the minds as to the correctness of the debt and admission of liability on the part of SnacLite.  Therefore, Sierra has made a *prima facie* showing of liability and the burden shifts to SnacLite.  SnacLite has presented no factual evidence to contradict Sierra's assertion that SnacLite is liable for $404,843.84.

The only point of contention raised in SnacLite's briefs or in oral argument is SnacLite's purported need to ascertain whether its customers received all of the shipments at issue.  However, SnacLite stated in oral argument that it has not received any complaints from its customers alleging that shipments were not received.  There is no evidence that any of SnacLite's customers have refused to

pay SnacLite due to a missing shipment. Furthermore, SnacLite has had more than three months since it was served in this case, and more than a month since Sierra filed the Motion for Summary Judgment, to confer with clients regarding any problems with shipments. It appears SnacLite has not done so. Ultimately, because an account stated is a post-transaction agreement, whether SnacLite's customers received the shipments at issue has no bearing on SnacLite's admission of liability for the account stated.

Finally Sierra contends it is entitled to pre-judgment interest at the rate of 6% per annum on the amount owed by SnacLite, pursuant to Alabama Code §§8-8-1 and 8-8-8 (1975). Section 8-8-1 sets the maximum rate of interest at 6% per year for debts not based on a written contract. Section 8-8-8 states:

> All contracts, express or implied, for the payment of money, or other thing, or for the performance of any act or duty bear interest from the day such money, or thing, estimating it at its money value, should have been paid, or such act, estimating the compensation therefor in money, performed.

Alabama Code § 8-8-8 (1975). Interest starts to accrue, however, only when the debt becomes, fixed, certain, or liquidated for a sum certain. As long as the amount of the debt remains uncertain, pre-judgment interest does not accrue. "[P]rejudgment interest is not awarded unless a sum is certain or is capable of being made certain." Lapeyrouse Grain Corp. v. Tallant, 439 So.2d 105

(Ala.1983); Health Care Auth. of City of Huntsville v. Madison County, 601 So. 2d 459, 463 (Ala. 1992) (no interest accrued on a hospital account until an itemized statement was filed, making the amount of the account certain).

In the instant case, Sierra's account stated became fixed and certain on February 11, 2015, when Petro acknowledged the debt rendered in Walker's February 6 e-mail. Only at that point did the elements of account stated accrue, including the certainty of the amount acknowledged by the debtor. Thus, pre-judgment interest at the rate of 6% per year has accrued from February 11 to the date of this judgment, April 6, 2015. The court calculates that interest to be $3,593.68, which shall be added to the judgment.[10]

## CONCLUSION

Because Sierra has made a *prima facie* showing of entitlement to an account stated, and SnacLite has failed to present any evidence refuting that claim, Sierra's Motion for Summary Judgment (doc. 12) is due to be granted, and a final judgment is due to be entered in favor of plaintiff Sierra Food Group, Inc., and against defendant SnacLite, LLC, in the amount of $404,843.84, plus pre-judgment

---

[10] To calculate the interest, the court multiplied the amount of the debt, $404,843.84, by six percent, resulting in $24,290.63. That sum was then divided by 365 to arrive at a daily interest rate of $66.55. That daily rate was then multiplied by the number of days between February 11 and April 6, 2015, or 54 days, arriving at a total accrued interest of $3,593.70.

15

interest in the amount of $3,593.70, for a total judgment of $408,437.54.  An order of final judgment for this amount will be entered contemporaneously herewith.

DONE this 6th day of April, 2015.

_____

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE